UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SANCHEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GRUMA CORPORATION, et al.,<br><br>　　　　Defendants. | Case No. 19-cv-00794-WHO<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 7 |

Steven Sanchez brings a number of employment related claims stemming from his employment with defendant Gruma Corporation ("Gruma"). Gruma moves to compel arbitration pursuant to an arbitration agreement covered by the Federal Arbitration Act (FAA) and signed by Sanchez. In the face of the strong federal policy in favor of arbitration, Sanchez argues that the arbitration agreement is invalid because it is both procedurally and substantively unconscionable. While he identifies (contested) reasons that there was procedural unconscionability in procuring his signature, there is nothing substantively unconscionable about the agreement. For this reason, I GRANT Gruma's motion to compel arbitration.

## BACKGROUND

### I.  FACTUAL BACKGROUND

On January 18, 2019, Sanchez brought suit against Gruma, which produces Mexican food products under the brand "Mission Foods," and Mission Foods Corporation, alleging state claims of unpaid wages, inaccurate wage statements, disability discrimination, failure to engage in a timely process to accommodate Sanchez's disability, failure to accommodate, retaliation, denial of medical leave, wrongful termination, and unfair business practices. Complaint attached as Exhibit A to Notice of Removal ("Compl.") [Dkt. No. 1-1]; Declaration of Horacio Gaitan in Support of Defendant's Notice of Removal ("Gaitan Decl.") at ¶ 3 [Dkt. No. 1-4]. Sanchez alleges that he

1 was employed by Gruma from April 2008 to August 2017. Compl. at ¶¶ 20, 55. During this time, he claims that he routinely worked more than eight hours per day and more than forty hours per work week. Compl. at ¶ 29.

On December 22, 2016, Sanchez signed an agreement (the "Arbitration Agreement") to arbitrate all claims between himself and Gruma. Arbitration Agreement attached as Exhibit A to Declaration of George Tate in Support of Defendant's Motion to Dismiss Action and Compel Arbitration Pursuant to FRCP 12(b)(1), 12(b)(6), or, in the Alternative to Compel Arbitration Under 9 USC 3 ("Tate Decl.") [Dkt. No. 7-3]. The parties describe the circumstances relating to Sanchez's signing of the Arbitration Agreement very differently.

According to Sanchez:

> In December of 2016, George Tate, the Human Resources Manager for Gruma Corporation held a meeting at the Hayward Warehouse where I worked with one shift of workers. I was present at this meeting along with other of my co-workers who worked the third shift.
>
> During the meeting, Mr. Tate handed out a purported arbitration agreement and stated we had to sign and return it before going home or returning to work that day. I did not know the importance of this document and had no opportunity to object to it. I was not aware that I could opt out of signing this purported arbitration agreement and would have done so if I knew. Because of the pressure to sign on the spot, I did not have a copy of the agreement to review at home.
>
> After the meeting, Mr. Tate approached me and told [me] that he wanted me to get everyone from other shifts who wasn't present at the meeting to sign the purported arbitration agreement. He told me that whoever did not sign the purported arbitration agreement could not have a job, or words to that effect. Then he laughed.

Declaration of Steven Sanchez in Support of Opposition to Defendant Gruma Corporation's Motion to Dismiss Action and Compel Arbitration Pursuant to FRCP 12(b)(1), 12(b)(6), or, in the Alternative to Compel Arbitration Under 9 USC 3 ("Sanchez Decl.") at ¶¶ 2-4 [Dkt. No. 8-2].

George Tate, the Human Resources Manager for Gruma, reports:

> In December of 2016 I held a meeting of employees at the Hayward Warehouse to present a proposed arbitration agreement for each employee to enter with Gruma. Mr. Sanchez attended this meeting. At the meeting I presented the agreement to Mr. Sanchez and the other present employees, and all employees had an opportunity to ask any questions they may have about the agreement. There was also a Spanish translator at the meeting who translated my presentation of

United States District Court
Northern District of California

> the agreement and was available to translate questions and answers of Spanish-speaking employees into Spanish. Spanish-language copies of the agreement were also available for any employee who preferred a Spanish-language version. Employees were asked to either return the agreement, should they wish to sign, at the meeting or, if they preferred, return it to me later if they wanted more time to review.

Tate Decl. at ¶ 3.

The Arbitration Agreement specifies that JAMS will administer any arbitration according to JAMS rules and procedures. Arbitration Agreement at ¶¶ 5,7. It also includes a general severability clause. *Id.* Under the terms of the Arbitration Agreement, employees have thirty days after signing to opt out of the Arbitration Agreement. *Id.* at 2. Sanchez does not allege that he opted out during the thirty-day window.

## II. PROCEDURAL BACKGROUND

Sanchez initially filed his complaint in Alameda County Superior Court. Compl. Prior to filing suit, he filed a Private Attorney General Act ("PAGA") Claim Notice with the Labor Workforce Development Agency. *Id.* at ¶ 6. He stated in the complaint that he intended to amend this suit to include a PAGA claim after the statutory period for action by the Labor and Workforce Development Agency had passed. *Id.* After Gruma removed this case to federal court under 28 U.S.C. section 1441(a), Sanchez filed a separate PAGA action in Alameda County Superior Court. At the hearing on the motion to compel arbitration on April 3, 2019, counsel for Gruma would not state whether Gruma intended to remove the PAGA claim to federal court as well.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the motion to compel arbitration. 9 U.S.C. §§ 1 *et seq.* Under the FAA, a district court determines: (i) whether a valid agreement to arbitrate exists and, if it does, (ii) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks and citation omitted). If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the

agreement." 9 U.S.C. § 4. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

**DISCUSSION**

**I.    APPLICABILITY OF THE FEDERAL ARBITRATION ACT**

Gruma asserts that if the Arbitration Agreement is valid and Sanchez's claims are within its scope, the FAA applies and requires arbitration. Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss Action and Compel Arbitration Pursuant to FRCP 12(b)(1), 12(b)(6), or, in the Alternative, to Compel Arbitration Under 9 USC 3 ("Mot.") at 5 [Dkt. No. 7-1]. According to Gruma, the Arbitration Agreement is within the scope of the FAA because it explicitly states that it is governed by the FAA and that the subject matter of the agreement involves commerce. *Id.*; Reply in Support of Motion to Compel Arbitration ("Reply") 6-7 [Dkt. No. 9].

The FAA governs an arbitration agreement if it is in a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause." *Perry v. Thomas*, 482 U.S. 483, 490 (1987). In accord with this intent, "evidencing a transaction" is construed broadly to require only that the transaction in fact involved interstate commerce. *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 281 (1995). Congress's power under the Commerce Clause is itself expansive, and "may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice . . . subject to federal control." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003) (internal quotation marks and citations omitted).

Here, the FAA governs because the contract between Sanchez and Gruma involves interstate commerce within the meaning of the Act. Gruma is incorporated in Nevada and has its corporate headquarters in Texas. Gaitan Decl. at ¶¶ 5, 6. Gruma hired Sanchez, a resident of California, to perform work in California. In his complaint, Sanchez asserted that Mission Foods was an "international corporation employing thousands of people." Compl. at ¶ 177.

4

1    Accordingly, the Arbitration Agreement is within the scope of the FAA because the employment

2    relationship between Sanchez and Gruma is a "transaction involving commerce" within the

3    meaning of the Act.[1]

## II.  UNCONSCIONABILITY

Under section two of the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court of the United States has interpreted this language to mean that arbitration agreements may be "invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability" without contravening section two. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks omitted). Courts apply state-law principles that govern the formation of contracts to determine whether a valid arbitration agreement exists. *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008) (*citing First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Sanchez asserts that the arbitration agreement is unenforceable because it is unconscionable. Whether a contract is unconscionable is a question of law. *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659, 1663 (Cal. Ct. App. 1993). In California, unconscionability includes an "absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 821 (Cal. Ct. App. 2010) (citation omitted). Accordingly, unconscionability has both a "procedural" and a "substantive" element. *Id*.

Procedural unconscionability occurs where a contract or clause involves oppression, consisting of a lack of negotiation and meaningful choice, or surprise, such as where the term at issue is hidden within a wordy document. *Id*. "California law treats contracts of adhesion, or at

---

[1] In its reply, Gruma also argues that I should grant its motion because the California Arbitration Act ("CAA") requires it. The CAA provides statutory protections for arbitration agreements. CAL. CIV. PROC. § 1281.2. Under the CAA, "the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists . . . ." *Id.* Because I find that the Arbitration Agreement falls under the FAA, I need not decide whether the CAA also applies.

5

least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010). Substantive unconscionability occurs where the provision at issue "reallocates risks in an objectively unreasonable or unexpected manner." *Lhotka*, 181 Cal. App. 4th at 821 (citation omitted). "Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause." *Id.* at 824-25 (citation omitted).

Both procedural and substantive unconscionability must be found before a term will be deemed unenforceable, but both need not be present to the same degree. Rather, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (Cal. 2000). Here, the parties' stories conflict regarding how the agreement was signed; if I accepted Sanchez's version, I would find that he established procedural unconscionability. But I need not resolve the conflict because there is no substantive unconscionability.

According to Sanchez, the Arbitration Agreement is substantively unconscionable because (i) it lacks mutuality and is one-sided; (ii) it inappropriately shifts the cost of arbitration to Sanchez and changes the standard regarding the award of attorneys' fees to Gruma; (iii) it provides for only minimal discovery; and (iv) it attempts to bar Sanchez's PAGA claims. Oppo. at 8-14.

The key factor to consider when determining if an agreement is substantively unconscionable is whether it contains a "modicum of bilaterality" such that it is not "unfairly one-sided." *Id.* at 116. "At a minimum, an arbitration agreement must: (1) provide for neutral arbitrators, (2) provide for more than minimal discovery, (3) require a written award, (4) provide for all types of relief that would otherwise be available in court, and (5) not require the employee to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." *Pope v. Sonatype, Inc.*, Case No. 15-cv-00956-RMW, 2015 WL 2174033, at *3 (N.D. Cal. May 8, 2015) (citing *Armendariz*).

6

### A. Mutuality

Sanchez argues that the Arbitration Agreement lacks mutuality and is one-sided because, while it explicitly covers claims typically brought by employees, it is ambiguous as to employer claims and the employer "retains the unfettered right to file in civil court." Oppo. at 8-9. Sanchez contends that Gruma cannot fairly point to "carve-outs" in the Arbitration Agreement reserving certain statutorily guaranteed rights under the Sarbanes-Oxley Act as evidence of mutuality. *Id.*

This misconstrues the terms of the Arbitration Agreement, which provide a non-exhaustive list of exemplar claims that would be subject to arbitration. It states:

> The parties agree that **any claim, dispute, or controversy between Employee and Company** (the "Claims") must be resolved by final and binding arbitration before one neutral arbitrator, including, without limitation, **any claims by Employee or the Company for**: (a) wages, overtime, bonuses, or other compensation; (b) breach of an express or implied contract or covenant; (c) tort claims, including fraud, defamation, wrongful discharge, and intentional/negligent infliction of emotional distress; (d) federal and state statutory or common law claims for unlawful discrimination, retaliation, or harassment including, without limitation, sexual harassment, discrimination or harassment based on race, color, sex, sexual orientation, religion, national origin, ancestry, age, marital status, medical condition, disability, uniformed service, genetic information, or any other unlawful basis (**by way of example only**, such claims include claims under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964 as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act ("ADA") and ADA Amendments Act of 2008, and the Family Medical Leave Act); (e) claims for benefits (except where the applicable benefit plan has specified a different arbitration procedure than is outlined in this Agreement); and (f) claims for violation of any federal or state constitutional rights, governmental law, statute, regulation, order, ordinance, or provision.

Arbitration Agreement at ¶ 1 (emphasis added).

The Supreme Court of California has conclusively held that such non-exhaustive lists in arbitration provisions, even those that list only claims typically brought by employees, are not substantively unconscionable. *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1248-49 (Cal. 2016). In *Baltazar*, the court found that an agreement with a similar illustrative list of typical employee claims bound the employer to arbitration of the employer's own claims. *Id.* The court reasoned that "[i]t is not particularly remarkable that the agreement's list of examples might highlight certain types of claims that employees often bring, since part of the purpose of the

agreement is to put employees such as [the plaintiff] on notice regarding the scope of the agreement, thus eliminating any possible surprise." *Id.* at 1249. It rejected the plaintiff's argument that the provision left open the possibility that the employer could pursue litigation for claims not expressly mentioned in the provision—"[t]he examples do not alter the substantive scope of the agreement, nor do they render the agreement sufficiently unfair as to make its enforcement unconscionable." *Id.*

Sanchez cites *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 665 (Cal. Ct. App. 2004), but it is easily distinguishable. Oppo. at 8-9. In *Abramson*, the arbitration agreement contained a carve-out that only benefitted the employer (it applied to claims related to trade secrets, confidential information, and other intellectual property for the employer only). *Id.* The court found that because the carve-out addressed only the employee's breach of covenants protecting intellectual property, the agreement lacked mutuality. *Id.* Here, there is no similar carve-out that only benefits Gruma.

Instead, the Arbitration Agreement is similar to the one in *Baltazar*. It covers "any claim, dispute, or controversy between Employee and Company[.]" Arbitration Agreement at ¶ 1. The list of claims in the Arbitration Agreement is illustrative, not exhaustive, and states that it is "by way of example only." *Id.* There is no mutuality problem in the arbitration agreement and this provision is not substantively unconscionable.[2]

### B. Shifting the Cost of Arbitration

Sanchez contends that the Arbitration Agreement would inappropriately shift the costs of arbitration onto him and allow the arbitrator to impose attorneys' fees and costs in violation of statutory safeguards. Oppo. 9-10. Gruma correctly points out that the Arbitration Agreement protects Sanchez from unreasonable costs or fees and requires Gruma to pay all arbitration fees in excess of what Sanchez would be required to pay if his claims were adjudicated in court. Mot. at

---

[2] Sanchez also claims that the Arbitration Agreement lacks mutuality because it includes claims against Gruma affiliates. Oppo. at 8. However, Sanchez cites no case to support the notion that arbitration provisions may not validly cover party-affiliated entities and that doing so would destroy mutuality. This is not a ground for finding substantive unconscionability.

8

10.

Sanchez identifies three clauses in the JAMS Rules that he contends are substantively unconscionable. JAMS Rule 24(f) states:

> The Award of the Arbitrator may allocate Arbitration fees and Arbitrator compensation and expenses, unless such an allocation is expressly prohibited by the Parties' Agreement or by applicable law. (Such a prohibition may not limit the power of the Arbitrator to allocate Arbitration fees and Arbitrator compensation and expenses pursuant to Rule 31(c).)

JAMS Rules § 24(f) (effective July 1, 2014) attached as Exhibit 1 to Gruma's Request for Judicial Notice [Dkt. No. 7-4].[3] JAMS Rule 24(g) states:

> The Award of the Arbitrator may allocate attorneys' fees and expenses and interest (at such rate and from such date as the Arbitrator may deem appropriate) if provided by the Parties' Agreement or allowed by applicable law. When the Arbitrator is authorized to award attorneys' fees and must determine the reasonable amount of such fees, he or she may consider whether the failure of a Party to cooperate reasonably in the discovery process and/or comply with the Arbitrator's discovery orders caused delay to the proceeding or additional costs to the other Parties.

*Id.* And JAMS Rule 31(c) states in relevant part:

> If an Arbitration is based on a clause or agreement that is required as a condition of employment, the only fee that an employee may be required to pay is the initial JAMS Case Management Fee. JAMS does not preclude an employee from contributing to administrative and Arbitrator fees and expenses. If an Arbitration is not based on a clause or agreement that is required as a condition of employment, the Parties are jointly and severally liable for the payment of JAMS Arbitration fees and Arbitrator compensation and expenses. In the event that one Party has paid more than its share of such fees, compensation and expenses, the Arbitrator may award against any other Party any such fees, compensation and expenses that such Party owes with respect to the Arbitration.

*Id.* Read together, Sanchez believes these rules would impose additional fees, including attorneys' fees and costs, that he would only be required to pay in court if his claim was found to be frivolous, unreasonable, or groundless. Oppo. at 9-10. He also states that Rule 31(c) places him at risk of being jointly and severally liable for any and all costs. *Id.* He argues that this would violate the holding in *Armendariz* that "costs unique to arbitration must be borne by the employer

---

[3] Gruma's request for judicial notice [Dkt. No. 8] is granted.

9

to avoid unconscionability . . . ." Oppo. at 9 (*citing* 24 Cal. 4th at 110-111).

Sanchez fails to read the JAMS Rules together with the terms of the Arbitration Agreement and JAMS Rule 24(f). The Arbitration Agreement states that "[t]he Company must pay all JAMS and arbitrator fees in excess of what Employee would be required to pay if the case was being adjudicated in court." Arbitration Agreement at ¶ 6. This provision repeats the holding in *Armendariz*, cited by Sanchez, stating that "the arbitration agreement or arbitration process cannot require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." 24 Cal.4th at 110 (emphasis in original). JAMS Rule 24(f) provides that the arbitrator may not allocate arbitration fees and arbitrator compensation if, as here, it is expressly prohibited by the parties' agreement. Read together, the Arbitration Agreement and JAMS Rules do not impose costs or fees that are prohibited under *Armendariz*.

Similarly, under the JAMS Rules, attorneys' fees may only be imposed on Sanchez "if provided by the Parties' Agreement or allowed by applicable law." JAMS Rule 24(g). Because the Arbitration Agreement does not provide for shifting of attorneys' fees, there is no added risk that he will be compelled to pay Gruma's fees. The terms of the Arbitration Agreement also prevent Sanchez from being jointly and severally liable for any arbitration costs.

In support of his argument that the Arbitration Agreement and JAMS Rules may impermissibly impose attorneys' fees on him, Sanchez cites *Trivedi v. Curexo Tech. Corp*, but again its facts are distinguishable. Oppo. at 10 (*citing* 189 Cal. App. 4th 387, 395 (Cal. Ct. App. 2010) (disapproved of on other grounds by *Baltazar*, 62 Cal. 4th 1248)). In *Trivedi*, the arbitration agreement itself contained a mandatory attorney fee and cost provision in favor of the prevailing party. *Id.* at 394. The court found that the arbitration agreement was unconscionable because it allowed recovery of attorneys' fees for the prevailing party in contravention of analogous Title VII jurisprudence. *Id.* Here, by contrast, the Arbitration Agreement does not allow recovery of attorneys' fees at all, much less create a mandatory fee shifting provision. *Trivedi* is of no help to Sanchez.

The Arbitration Agreement does not impose unreasonable costs or arbitrator fees in

10

violation of *Armendariz*. Its terms clearly provide that Gruma will pay the costs of arbitration and there is no provision for fee shifting. The Arbitration Agreement is not substantively unconscionable on this basis.

**C.     Adequate Discovery**

Sanchez argues that the Arbitration Agreement does not provide for more than minimal discovery, as required under *Armendariz*. Oppo. at 11 (*citing* 24 Cal.4th at 102-103). Although the Arbitration Agreement does not, by its own terms, provide guidance or limitations on discovery, the JAMS Rules do and they are incorporated into the Arbitration Agreement. JAMS Rule 17 states:

> (a) The Parties shall cooperate in good faith in the voluntary and informal exchange of all non-privileged documents and other information (including electronically stored information ("ESI")) relevant to the dispute or claim immediately after commencement of the Arbitration. They shall complete an initial exchange of all relevant, non-privileged documents, including, without limitation, copies of all documents in their possession or control on which they rely in support of their positions, names of individuals whom they may call as witnesses at the Arbitration Hearing and names of all experts who may be called to testify at the Arbitration Hearing, together with each expert's report, which may be introduced at the Arbitration Hearing, within twenty-one (21) calendar days after all pleadings or notice of claims have been received. The Arbitrator may modify these obligations at the Preliminary Conference.
>
> (b) Each Party may take at least one deposition of an opposing Party or an individual under the control of the opposing Party. The Parties shall attempt to agree on the number, time, location and duration of the deposition(s). Absent agreement, the Arbitrator shall determine these issues, including whether to grant a request for additional depositions, based upon the reasonable need for the requested information, the availability of other discovery and the burdensomeness of the request on the opposing Parties and witness.
>
> (c) As they become aware of new documents or information, including experts who may be called upon to testify, all Parties continue to be obligated to provide relevant, non-privileged documents, to supplement their identification of witnesses and experts and to honor any informal agreements or understandings between the Parties regarding documents or information to be exchanged. Documents that were not previously exchanged, or witnesses and experts that were not previously identified, may not be considered by the Arbitrator at the Hearing, unless agreed by the Parties or upon a showing of good cause.

> (d) The Parties shall promptly notify JAMS when a dispute exists regarding discovery issues. A conference shall be arranged with the Arbitrator, either by telephone or in person, and the Arbitrator shall decide the dispute. With the written consent of all Parties, and in accordance with an agreed written procedure, the Arbitrator may appoint a special master to assist in resolving a discovery dispute.

Sanchez states that JAMS Rule 17(b) violates *Armendariz*, because it limits him to only one deposition and does not provide for formal discovery. Oppo. at 11-14.

Contrary to Sanchez's assertion, the discovery guidelines do not limit him to one deposition. Oppo. at 14. JAMS Rule 17(b) allow each party to take *at least* one deposition. Other courts have found this provision of JAMS Rule 17(b) to provide for more than minimal discovery. *Pope*, 2015 WL 2174033 at *5; *Sanchez v. Homebridge Fin. Services, Inc.*, Case No. 17-cv-1267, 2018 WL 1392892, at *6 (E.D. Cal. 2018) (finding that the "reasonable need" standard for additional depositions in JAMS Rule 17(b) provided for more than minimal discovery). In a similar case, an agreement that required parties seeking more than three depositions to meet with the arbitrator to discuss discovery issues was not substantively unconscionable because it did not limit the number of depositions a party may take. *Marchand v. Northrup Grumman Corp.*, No. 16-cv-06825-BLF, 2017 WL 2633132, at *12-13 (N.D. Cal. June 19, 2017).

Sanchez also argues that the Arbitration Agreement is substantively unconscionable because it does not allow "formal discovery" and because the arbitrator must approve further discovery beyond the initial exchange of information. Oppo. at 12. The "more than minimal discovery" standard does not entitle a party to formal discovery. In *Saline v. Northrop Grumman Corp.*, the court found that JAMS Rules identical to those here provided more than minimal discovery and requiring the arbitrator to approve further discovery beyond the initial exchange of information did not violate *Armendariz*. No. 08-cv-08398, 2009 WL 10674037, at *6 (E.D. Cal. Feb. 9, 2009).

Sanchez cites two cases in support of his argument that the discovery under JAMS Rule 17 violates *Armendariz*. First, he cites to *Ontiveros v. DHL Express (USA), Inc,* 164 Cal. App. 4th 494 (Cal. Ct. App. 2008) (abrogation on other grounds recognized by *Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th 227 (Cal. Ct. App. 2015). In *Ontiveros*, absent a showing of

"substantial need," each party only had a right to one deposition of one individual and any expert witness designated by another party. *Id.* at 511. In Sanchez's second case, *Baxter v. Genworth N. Am. Corp.*, the court found that an arbitration provision that provided for additional discovery upon a showing of "good and sufficient cause" was unconscionable. 16 Cal. App. 5th 713, 727-30 (Cal. Ct. App. 2017).

The parties are not so limited here. The "reasonable need" standard here for additional depositions, is a lower standard than has been found permissible by other courts. *Homebridge*, 2018 WL 1392892, at *6 (distinguishing JAMS Rule 17(b) from the ruling in *Baxter*). Moreover, there are obligations to exchange all relevant, non-privileged documents in the parties' possession and control, to identify the names of all witnesses and experts, to provide each expert's report, and to supplement those productions. The JAMS rules contemplate discovery hearings as well as the Arbitrator's determination on the number of depositions that are reasonable given the specific case before her. In short, the arbitration agreement provides for more than minimal discovery.

### D. Unenforceable waiver of PAGA claims

Finally, Sanchez asserts that the Arbitration Agreement illegally attempts to bar his PAGA claims. Oppo. at 14. In relevant part, the Arbitration Agreement states that "[c]laims must be brought in a party's individual capacity and not in a class, collective, or representative capacity." Arbitration Agreement at ¶ 7. Sanchez cites *Iskanian v. CLS Transportation Los Angeles, LLC,* 59 Cal.4th 348, 384 (Cal. 2014), in which the California Supreme Court held that where an employment agreement compels the waiver of representative claims, whether or not the agreement specifically references PAGA, it frustrates the PAGA's objectives and is contrary to public policy and unenforceable as a matter of state law. He argues that severance of the PAGA waiver would be inappropriate because the Arbitration Agreement contains multiple purported unconscionable provisions such that it is "permeated by unconscionability." Oppo. at 15.

In opposition, Gruma concedes that the waiver of representative action claims is unenforceable but contends that it does not render the entire Arbitration Agreement unenforceable or unconscionable. Reply at 14. It cites *Poublon*, where the Ninth Circuit dealt with this precise issue. *Id.* (*citing* 846 F.3d at 1264). In *Poublon*, the court held that "the unenforceability of the

13

waiver of a PAGA representative action does not make [an arbitration containing a PAGA waiver] substantively unconscionable." 846 F.3d at 1264. The court reasoned that under California law, contracts can be contrary to public policy without being unconscionable and vice versa and that "even if the parties cannot lawfully agree to waive a PAGA representative action, [the U.S. Supreme Court's decision in] *Concepcion* weighs sharply against holding that the waiver of other representative, collective or class action claims, as provided in the dispute resolution provision, is unconscionable." *Id.*

Following the Ninth Circuit's guidance in *Poublon*, I find that the Arbitration Agreement is not substantively unconscionable despite the unenforceability of the PAGA representative action waiver. *Poublon*, 846 F.3d at 1263; *Sakkab v. Luxottica Retail North America, Inc.*, 803 F.3d 425, 440 (9th Cir. 2015) (waiver of PAGA claims was unenforceable but severable). I will sever the PAGA provision and any claims arising from it. *Whitworth v. SolarCity Corp.*, 336 F. Supp. 3d 1119, 1130 (N.D. Cal. 2018) (Corley, J.); *Hermosillo v. Davey Tree Surgery Co.*, No. 18-cv-00393-LHK, 2018 WL 3417505, at *20 (N.D. Cal. July 13, 2018) (same).

I have found no other substantive unconscionability contained in the Arbitration Agreement. Accordingly, I grant Gruma's motion to compel. Even assuming that there was a high degree of procedural unconscionability, an arbitration agreement may only be found unconscionable if it is both procedurally and substantively unconscionable. *Armendariz*, 24 Cal. 4th at 114. Although Sanchez would have needed only a modicum of substantive unconscionability to successfully oppose Gruma's motion, he has not identified any. Gruma's motion to compel is granted.

As I have found that the Arbitration Agreement's waiver of PAGA claims is unenforceable, it must be severed from the contract.

### III. STAY OR DISMISSAL OF PROCEEDINGS

At the hearing held on April 3, 2019, Gruma's counsel represented that on March 19, 2019, Sanchez filed his PAGA claim in state court based on the same facts in this action. Gruma asks that I dismiss this suit because Sanchez has elected to pursue his PAGA claim elsewhere. But Gruma would not commit to litigating the PAGA claim in state court and its counsel stated that it

14

still may seek to remove the PAGA claims to federal court as well.  Sanchez asks that if the PAGA claims are removed, his non-PAGA claims should be stayed and the PAGA claims litigated.  Because Gruma has not decided whether to remove the PAGA claims, I too do not decide whether to retain jurisdiction until the arbitration is complete or dismiss it.  The parties are directed to file a joint status report on the status of the matter on July 8, 2019.

## CONCLUSION

I grant Gruma's motion to compel arbitration.  A Case Management Conference is set for July 15, 2019.

**IT IS SO ORDERED.**

Dated: April 9, 2019

William H. Orrick
United States District Judge